The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

ZAY SHUMLICH, an individual,

    Plaintiff,

v.

U.S. BANK, N.A.,

    Defendant.

Case No. 2:24-cv-01681

**DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
November 21, 2025

WITHOUT ORAL ARGUMENT

## I. INTRODUCTION

Defendant U.S. Bank (Defendant or U.S. Bank) employed Plaintiff Zay Shumlich as a Mortgage Loan Assistant ("MLA"). In this role, she was tasked with helping other employees prepare and close mortgage loan applications. In 2022, inflation spiked, and mortgage interest rates climbed sharply. As is normal when interest rates rise, there are fewer consumers looking to take out (or refinance) home loans, and as a result the mortgage volume plummets. When this happens, there is less work for MLAs and there are layoffs. Ms. Shumlich was one of those MLAs that were selected for layoff because she was unable to get along with her manager and others, and the person she had been supporting was receiving good support from another MLA.

Despite being laid off due to her repeated negative interactions and the downturn in the economy, Plaintiff claims, without evidence, that her termination was in fact discrimination based on her race and gender and interfered with her leave under Washington's Paid Family Medical Leave

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 1
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

Act (WPFMLA). However, there is no evidence to support either of those claims. Instead, even when the evidence is viewed in the light most favorable to the Plaintiff, the evidence shows that Defendant had legitimate reasons for deciding to terminate Plaintiff's employment, and there is no admissible evidence to demonstrate that the proffered reasons are pretextual. Accordingly, the Court should grant summary judgment in favor of Defendant U.S. Bank as to all claims.

## II. STATEMENT OF UNDISPUTED FACTS

### A. U.S. Bank Has Strong Policies Against Discrimination and Strong Leave Policies

U.S. Bank is one of the nation's largest financial institutions with a diverse workforce that is committed to maintaining a workplace free of unlawful discrimination. As evidence thereto, U.S. Bank has enacted numerous policies to ensure its commitment to being an equal opportunity employer and creating an atmosphere free from unlawful discrimination. *See* Declaration of Scott Beimer ("Beimer Decl."), Ex. 1 (EEO Policy). In its EEO policy, titled "Equal Employment Opportunity & Affirmative Action," U.S. Bank "prohibit[s] both discrimination against and harassment of any employee or applicant on the basis of race, religion, color, age, sex, creed, national origin or ancestry, citizenship, marital status, sexual orientation, gender identity or expression, genetic information, disability or association with a person… protected by federal, state, and local legislation." U.S. Bank's policy also states that it will ensure that all personnel actions "are administered without regard to an individual's disability, veteran or other protected status." *Id*. As a sign of commitment to these policies, U.S. Bank managers and those responsible for making employment decisions at U.S. Bank are subjected to regular training regarding Equal Employment Opportunity laws. *Id* at Ex. 6 (Higgins Dep. at 18:21-25; 19:1-5).

Likewise, U.S. Bank has strong policies surrounding leave, including maternity leave. U.S. Bank's "Family and Medical Leave Act (FMLA) Leave" policy details its commitment to allow eligible employees to care for themselves or a family member, and the U.S. Bank's "Paid Pregnancy Disability Leave" policy provides up to 9-weeks of paid time off for pregnancy, childbirth and related medical conditions. *Id* at Ex. 2 &3 (Family and Medical Leave Act Policy, Paid Pregnancy

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 2
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

Disability Leave Policy). U.S. Bank retains an outside agency, The Hartford, to help manage its employees' leaves. *Id* at Ex. 6 (Higgins Dep. at 18:21-25; 19:1-5), Ex. 5 (Hogg Dep. at 29:9-20). U.S. Bank utilizes The Hartford to manage its leaves for two reasons. First, it keeps the employee's manager out of the decision, to allow the employee to speak privately with The Hartford regarding his or her needs. *Id.* Second, The Hartford can assess those requests from a legal perspective to ensure that employee leaves are handled as well as possible. *Id.*

### B. Plaintiff's Employment History with U.S. Bank

Zay Shumlich was originally hired by U.S. Bank in 2014as a Loan Originator. *Id* at Ex. 4 (Shumlich Dep. at 76:7-14). According to Ms. Shumlich, although the role was tolerable, she realized that she preferred "to support teams than being an individual loan officer." *Id* at Ex. 4 (Shumlich Dep. at 77:21-23). Despite her preference to support others, Ms. Shumlich performed satisfactorily , although she admits she could have performed better. *Id* at Ex. 4 (Shumlich Dep. at 78:4-6). In November of 2015, Ms. Shumlich left the bank to join a competing mortgage lending firm in a support role. *Id* at Ex. 4 (Shumlich Dep. at 80:23-25; 82:2-4).

After several years, on May 8, 2018, Ms. Shumlich rejoined U.S. Bank as a Mortgage Loan Assistant ("MLA") assigned to support a Mortgage Loan Originator. Compl. ¶ 3.1. Around that time, a manager at U.S. Bank reached out to Ms. Shumlich to ask if she might be willing to come to work for the bank. *Id* at Ex. 4 (Shumlich Dep. at 87:9-18). According to the manager, there was a team of Mortgage Loan Originators ("MLO") that were searching for a second Mortgage Loan Assistant ("MLA") to help them. *Id.* Ms. Shumlich applied and interviewed with one of the MLOs, Melany Hannibal, along with the existing MLA, a woman named Chanelle. *Id* at Ex. 4 (Shumlich Dep. at 90:3-11). The second MLO, Jeff Payne, was out of the office due to a death in his family and could not attend the interview. *Id* at Ex. 4 (Shumlich Dep. at 90:5-9). Ms. Shumlich was told that the MLA position was there to "just really to support the team, deal with all of the communications" related to the loans originated by Ms. Hannibal and Mr. Payne. *Id* at Ex. 4 (Shumlich Dep. at 90:20-22).

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 3
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

In January of 2021, Ms. Hannibal and Mr. Payne decided to end their partnership. *Id* at Ex. 4 (Shumlich Dep. at 50:18-25). At that time, Ms. Hannibal decided to focus more on originating loans with builders, while Mr. Payne continued to focus on originating loans with real estate agents. *Id.* When the two MLOs split, Mr. Payne decided (without Ms. Shumlich's input) that Ms. Shumlich would continue to support him alone, while the other two MLAs would continue to support Ms. Hannibal. *Id* at Ex. 4 (Shumlich Dep. at 95:17-98:5).

This split apparently worked well for everyone, and Ms. Shumlich continued to perform her duties in a technically proficient manner. *Id* at Ex. 5 (Hogg Dep. at 18:11-18). However, although Ms. Shumlich was performing well "moving the files," she had considerable friction with her manager, Alex Hogg. Mr. Hogg described his evaluation of her performance: "I think she did well on moving the loan files. I think she did in my opinion poorly in the interpersonal skills with just having a productive relationship with her manager, also with internal support partners, processors, underwriters. There were times that I'd get feedback from them that, you know, just very, very demanding or not understanding, so –" *Id* at Ex. 5 (Hogg Dep. at 16:10-16). Notwithstanding this friction, Mr. Hogg did not make an issue of it because she was so technically proficient. *Id* at Ex. 5 (Hogg Dep. at 18:14-18).

**C.    Plaintiff Requests, and Is Granted, Maternity Leave**

In August or September of 2021, Ms. Shumlich told Jeff Payne and Alex Hogg that she would need to take maternity leave in January or February of the following year. *Id* at Ex. 4 (Shumlich Dep. at 151:19-25). Ms. Shumlich has no memory of any response from Mr. Hogg. *Id* at Ex. 4 (Shumlich Dep. at 155:16-156:16). Mr. Hogg testified that he told Ms. Shumlich that she had to reach out to The Hartford, because they made all decisions regarding leave. *Id* at Ex. 5 (Hogg Dep. at 29:8-12). However, according to Mr. Hogg, Ms. Shumlich did not call The Hartford but continued to press him about whether her leave was approved. *Id* at Ex. 5 (Hogg Dep. at 29:21-31:2). Eventually, Mr. Hogg was required to have his manager, John Higgins, advise Ms. Shumlich that she needed to call The Hartford. *Id.* Mr. Hogg described his frustration with Ms. Shumlich's

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 4
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

continued demands that he answer her questions about pay and other topics, instead of reaching out to HR as he advised. *Id* at Ex. 5 (Hogg Dep. at 31:20-34:21). Likewise, Mr. Higgins reported that his assistant, Cindy Brinkman-Hall, also reported that Ms. Shumlich was abusive to her, to the point that Ms. Brinkman-Hall was "almost in tears one day." *Id* at Ex. 6 (Higgins Dep. at 106:13-25).

Nonetheless, Ms. Shumlich eventually provided the necessary information to The Hartford, and she was provided maternity leave from January 28, 2022, to June 9, 2022. *Id* at Ex. 6 (Higgins Dep. at 32: 1-6). During Ms. Shumlich's leave, Mr. Payne still needed support, and the bank assigned another MLA, Brandy Rohn, to support him. *Id* at Ex. 7 (Payne Dep. at 26:25-27:4). According to Mr. Payne, "Brandy did a good job for [him]" and he was happy with the way she supported him throughout their working relationship. *Id* at Ex. 7 (Payne Dep. at 43:7-10.)

**D.      Economic Changes Resulted in Need for Reduction of Defendant's Workforce**

While Plaintiff was on leave, there was a spurt of inflation in the United States that lead to an increase in interest rates from 2.75% to over 5%. *Id* at Ex. 6 (Higgins Dep. at 55:1-4). This resulted in loan volume at U.S. Bank dropping in half. *Id.* Due to this drop in volume, U.S. Bank made the difficult decision to begin the process of conducting a reduction in the size of its workforce ("RIF") that was brought on by a significant drop in loan volume revenue for the company. *Id* at Ex. 6 (Higgins Dep. at 24:12-16). Plaintiff does not dispute that U.S. Bank suffered a reduction in revenues due to a drop in loan volume and affirmed at her deposition that U.S. Bank should be trusted on this issue. *Id* at Ex. 4 (Shumlich Dep. at 105:24-25;106:1-2). As part of this RIF process, U.S. Bank began reviewing MLA positions for elimination given the diminished need for administrative support. *Id* at Ex. 6 (Higgins Dep. at 38:19-25; 39:1; 49:23-25; 50:1-7, 23-25; 51:1).

As part of the RIF, a Peer Group Analysis ("PGA") was conducted by U.S. Bank Regional Manager, John Higgins, to ensure that employees were "evaluated and ranked consistently against criteria taking into account relevant skills, knowledge and experience." *Id* at Ex. 6 (Higgins Dep. at 49:23-25;50:1-7). Mr. Higgins used the PGA in order to help him rank the 25 MLAs within his region and identify positions for layoffs. Mr. Higgins testified that he completed the PGA form after

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 5
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

"calling every [M]LO that works with one of [his] 25 MLAs, and then also the manager of that MLA and then Cindy [Brinkman-Hall]" to get feedback from each of them. *Id* at Ex. 6 (Higgins Dep. at 25:9-13). Mr. Higgins based his scoring on these interviews, instead of prior performance, because "They're old. I always want to go off most recent feedback" and "when I let people go, I want to know how they are doing right now, not how they were doing half a year ago." *Id* at Ex. 6 (Higgins Dep. at 36:18-23).

During Mr. Higgins' interviews with Mr. Hogg, Mr. Payne, and Ms. Brinkman-Hall (Mr. Higgins' Executive Assistant), he learned that while Plaintiff was competent at moving loan applications, she had a history of poor interpersonal skills that were exemplified by her very negative and confrontational demeanor during her leave. *Id* at Ex. 6 (Higgins Dep. at 54: 3-25; 55:1-10; 57:18-25; 58:1-5), at Ex. 5 (Hogg Dep. at 15:16-25; 16:1-16, 128:18-25; 129:1-5). Based on his conversation with Mr. Payne[1], Mr. Higgins understood that Mr. Payne preferred to keep working with Brandy Rohn rather than working with Plaintiff again because Ms. Rohn was more proficient than Plaintiff. *Id* at Ex. 6 (Higgins Dep. at 25:7-13; 36:4-10). These reviews negatively impacted Plaintiff's PGA score, which ultimately found her to be in the bottom 3 of the 25 MLAs and resulted in her position, along with the other bottom two MLA positions, being marked for elimination. *Id* at Ex. 6 (Higgins Dep. at 21:16-23; 47:11-13; 58:15-25; 59:1-4).

Notably, another MLA named Micaela McKay was also out on maternity leave during the same time but was not selected for the RIF. *Id* at Ex. 4 (Shumlich Dep. at 50:3-7; 57:5-8; 160:11-17; 184:3-11). Ms. McKay supported a separate MLO that did significantly more business volume than Plaintiff's MLO, Jeff Payne. *Id* at Ex. 4 (Shumlich Dep. at 50:3-7; 114:22-25). At her deposition, Plaintiff admitted that she had no knowledge regarding the performance and proficiency of other MLAs, like Ms. McKay, and that during their simultaneous periods of leave, Plaintiff texted Ms. McKay to reassure her that Ms. McKay's job and team would likely be "fine" despite the recent

---

[1] In his deposition, Mr. Payne denied saying that he "would prefer not to have Ms. Shumlich come and support me." Payne Dep at 33:14-17. However, Mr. Payne did admit that he could have spoken with Mr. Higgins about Ms. Rohn's performance, although he could not remember when that happened. Payne Dep at 45:9-14.

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 6
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

downturn in volume that would necessitate getting rid of MLAs, because the team Ms. McKay supported performed a significantly more business. *Id* at Ex. 4 (Shumlich Dep. at 117:16-20; 132:8-16; 133:20-25; 134:1-21).

At his deposition, Mr. Higgins was asked multiple times whether he could recall what issues Plaintiff expressed frustration with while she was on leave. *Id* at Ex. 6 (Higgins Dep. at 62:21-25; 63:1-2; 86:9-24). Mr. Higgins could not recall the specific issues Plaintiff had with her leave, but what did stand out to him in his conversations with Mr. Hogg and Ms. Brinkman-Hall was just how angry Plaintiff was at them because she was not getting the answers she wanted regarding her leave. *Id.* Mr. Higgins never testified that Plaintiff's decision to take a leave of absence negatively impacted her evaluation.

### III.     ARGUMENT AND AUTHORITY

#### A.     Summary Judgment Standard

Summary judgment is not disfavored. Quite to the contrary, it is an "integral part of the Federal Rules" designated for "every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). This principle applies equally in employment discrimination cases, and the U.S. Supreme Court has reiterated that district courts "should not treat discrimination cases differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (citation omitted). Summary judgment should be granted when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). To be "material," a factual dispute must have the possibility of affecting the outcome of the lawsuit under the governing law. *Golafale v. Swedish Health Servs.*, 2016 U.S. Dist. LEXIS 46175, at *22 (W.D. Wash Apr. 5, 2016) (Robart, J.). Once a defendant informs the Court of the basis for its motion, the plaintiff must present "significant probative evidence tending to support its claim..." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991); *see also Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(c). Only admissible evidence may be considered. *Golafale*, 2016 U.S. Dist. LEXIS 46175, at *22. Plaintiff cannot defeat summary judgment by

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 7
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

taking a position that is contradicted by all of the evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). "[S]ummary judgment may be granted in favor of an employer even when the employee has created a weak issue of fact concerning pretext, if abundant, uncontroverted, independent evidence indicates that no discrimination or retaliation occurred." *Richards v. City of Seattle*, 2008 U.S. Dist. LEXIS 49406, at *33-34 (W.D. Wash. June 26, 2008) (citations omitted).

### B. Plaintiff Cannot Prove that Discriminatory Animus Was a Cause of Ms. Shumlich's Layoff

To state a *prima facie* case of disparate treatment discrimination, Plaintiff must show that she is a member of a protected class; had an adverse action taken against her; was doing satisfactory work or was qualified for the job; and was treated less favorably or replaced by someone not in her protected class. *Laborde v. Regents of Univ. of California*, 686 F.2d 715, 717 (9th Cir. 1982); *Grimwood v. University of Puget Sound, Inc.*, 110 Wn. 2d 355, 362 (1988).[2] If Plaintiff establishes a *prima facie* case, U.S. Bank must articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Grimwood*, 110 Wn.2d at 363-64. If it does so, Plaintiff must then satisfy the ultimate burden of demonstrating that U.S. Bank's articulated reasons are a mere pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Grimwood*, 110 Wn.2d at 364.

Plaintiff must show Defendant's articulated reasons are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly

---

[2] The WLAD is patterned after Title VII and follows the same principles. *See, e.g., Oliver v. Pacific Northwest Bell Tel. Co.*, 106 Wn.2d 675, 678 (1986). In turn, when analyzing an employee's 42 U.S.C. § 1981 claim, courts apply "the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004); *see also Jurardo v. Eleven-Fifty C*orp., 813 F.2d 1406, 1412 (9th Cir. 1987); *Woods v. Washington*, 2011 U.S. Dist. LEXIS 5423, at *12-13 (W.D. Wash. Jan. 19, 2011) (applying same analysis to all three types of claims in disparate treatment discrimination case). Therefore, the analysis of whether Plaintiff has a cognizable claim is the same under the WLAD, Title VII, and 42 U.S.C. § 1981.

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 8
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 256 (citation omitted). *See also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 (9th Cir. 1994); *Chen v. State of Wash.*, 86 Wn. App. 183, 190 (1997).

### 1. US Bank Had a Legitimate Non-Discriminatory Business Reason for Terminating Plaintiff.

Assuming *arguendo* that Plaintiff can establish her *prima facie* case under the WLAD, U.S. Bank had a legitimate business reason for deciding to eliminate Plaintiff's MLA position. The year 2022 brought a drastic change in the housing market after interest rates doubled, which resulted in a substantial decline in business for U.S. Bank and necessitated the need for cost cutting efforts. *See* Beimer Decl. at Ex. 4 (Shumlich Dep. 105:24-25;106:1-2). After conducting an exhaustive PGA evaluation of all 25 MLAs in his region, Mr. Higgins determined that Plaintiff was in the bottom 3 of those 25, and therefore her position was marked for elimination in order to help the company minimize its financial losses. *Id* at Ex. 6 (Higgins Dep. at 21:16-23; 47:11-13; 58:15-25; 59:1-4). It was Plaintiff's low PGA evaluation, not her pregnancy or leave, that made it necessary to eliminate her position. Notably, Plaintiff's low PGA evaluation was primarily based upon the feedback that Mr. Higgins received from co-workers (both male and female) who criticized Plaintiff for her interpersonal skills and ability to work well with others. *Id* at Ex. 6 (Higgins Dep. at 54: 3-25; 55:1-10; 57:18-25; 58:1-5), at Ex. 5 (Hogg Dep. at 15:16-25; 16:1-16, 128:18-25; 129:1-5). When determining which positions must be eliminated, identifying those who do not work well with others and selecting those with the lowest PGA score was a legitimate reason for Mr. Higgins' decision.

### 2. Plaintiff Cannot Demonstrate Pretext Because There is No Evidence of Discrimination.

Given that Defendant has provided a legitimate non-discriminatory reason for the layoff, Plaintiff must prove that the proffered reason was pretextual, or judgment for Defendant is appropriate. However, there is no evidence in this case of any racial or gender animus such that
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 9
CASE NO. 2:24-CV-01681

Littler Mendelson, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

Plaintiff can demonstrate that her termination was actually driven by animus, instead of business needs.

When asked for examples that may reveal such animus, Ms. Shumlich could not provide any examples, but instead relied solely on speculation. For example, when Ms. Shumlich was asked why she suspected that her separation was related to her race, she stated "I don't know, because I don't know what the layoff criteria was. But again, that's just my opinion. Q. I mean, were you ever, were you ever treated poorly because of your race at U.S. Bank? A. I wouldn't say that I have firm examples. So, no." *Id* at Ex. 4 (Shumlich Dep. at 189:23-190:7), See also Ex. 4 (Shumlich Dep at 49:2-22). This baseless speculation does not rise to the level of admissibility, much less provide the "significant probative evidence tending to support its claim..." *Intel Corp.*, 952 F.2d at 1558. As Plaintiff cannot meet this burden, the Court should dismiss Ms. Shumlich's claim for discrimination under the WLAD.

### C. Plaintiff's Claim for Violation of Washington Paid Family Medical Leave Act Also Fails

Like the FMLA, the WPFMLA makes it unlawful for an employer to (a) "[i]nterfere with restrain, or deny the exercise of, or the attempt to exercise, any valid right under the WPFMLA or (b) "[d]ischarge or in any other manner discriminate against any employee for opposing any practice made unlawful" by the WPFMLA. RCW 50A.40.010(1).[3] Because the WPFMLA "mirrors its federal counterpart," courts "construe its provisions in a manner consistent with similar provisions of the FMLA." *Crawford v. JP Morgan Chase NA,* 983 F.Supp.2d 1264, 1269 (W.D. Wash. 2013). Under the FMLA, employers interfere with employees' FMLA rights if they use FMLA protected leave as a negative factor in employment decisions. *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1124 (9th Cir. 2001). However, "[t]he FMLA does not provide employees with immunity from termination." *Jergens v. Marias Med. Ctr.,* No. C20-15-GF-BMM,

---

[3] Plaintiff's Complaint does not allege discrimination under WPFMLA, but instead alleges that U.S. Bank "interfered with her rights under the Washington Paid Family Medical Leave Act, RCW 50A.40. et seq." Compl. ¶ 5.2.

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 10
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

2021 U.S. Dist. LEXIS 142758, 2021 WL 3270477, at 4 (D. Mt. 2021); *see also* 29 USC § 2614(a)(3)(B) (the FMLA does not entitle employees to "any right, benefit, or position" that they would not have been entitled to had they not taken leave). Employees on WPFMLA leave are not immune from RIFs because they have taken WPFMLA leave, but companies cannot consider an employee's WPFMLA leave as a negative factor in selecting them for layoff. *See,* e.g., *Liu v. Amway Corp.,* 347 F.3d 1125, 1136 (9th Cir. 2003).

Plaintiff's claim that U.S. Bank interfered with her rights under the WPFMLA fails because Plaintiff has not put forth any evidence that U.S. Bank considered Plaintiff's leave of absence as a negative factor in determining whether or not her position should be eliminated. Instead, Mr. Higgins was adamant at his deposition that his reason for ranking Plaintiff in the bottom 3 out of 25 MLAs was the negative feedback he received from Plaintiff's co-workers regarding her attitude toward them while on leave that demonstrated an inability to work well with others. *Id* at Ex. 6 (Higgins Dep. at 21:16-23; 47:11-13; 58:15-25; 59:1-4). There has been no evidence put forth, other than Plaintiff's own speculation, that U.S. Bank viewed Plaintiff's leave of absence negatively when considering whether her position should be eliminated.

### IV.   CONCLUSION

U.S. Bank respectfully requests that the Court grant its motion for summary judgment and dismiss all of Plaintiff's claims against it with prejudice.

//
//
//
//
//
//
//

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 11
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

Dated: October 24, 2025

I certify that this memorandum contains 3,865 words, in compliance with the Local Civil Rules.

*/s/ Derek Bishop*
Derek Bishop, WSBA #39363
debishop@littler.com
Scott Beimer, WSBA #39214
rflemer@littler.com

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
Telephone:  206.623.3300
Facsimile:  206.447.6965

*Attorneys for Defendant*

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 12
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

# CERTIFICATE OF SERVICE

I am a resident of the State of Washington, over the age of eighteen years, and not a party to the within action. My business address is One Union Square, 600 University Street, Suite 3200, Seattle, WA 98101. I hereby certify that on October 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF system participants:

**Plaintiff's Counsel of Record**

Matthew J. Bean, WSBA #23221
Jason W. Preston, WSBA #61451
BEAN LAW GROUP
2200 Sixth Avenue, Suite 500
Seattle, WA 98121
Tel: 206-522-0618
matt@beanlawgroup.com;
jason@beanlawgroup.com

I certify under penalty of perjury under the laws of the United States and of the State of Washington that the foregoing is true and correct

Executed on October 24, 2025, at Seattle, Washington.

*/s/ Karen Fiumano Yun*
Karen Fiumano Yun
kfiumano@littler.com
**LITTLER MENDELSON, P.C.**

4921-9015-1794.3 / 021035.4189

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 13
CASE NO. 2:24-CV-01681

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300